UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | INFORMATION NO. |
| ) | |
| ) | 21 U.S.C. §§ 331(a) and 333(a)(1) |
| MATTHEW RYNCARZ ) | Misbranded Drugs |
| and ) | |
| FUSION HEALTH AND ) | |
| VITALITY, LLC, ) | CR420 075 |
| D/B/A PHARM ORIGINS, ) | |
| ) | |
| DEFENDANTS ) | |

THE UNITED STATES ATTORNEY CHARGES THAT:

Introduction

At all times material to this Information:

1. From around March 2020, and continuing until on or about April 8, 2020, the exact dates being unknown, in the midst of the COVID-19 global pandemic, Defendants Matthew Ryncarz and Fusion Health and Vitality, LLC d/b/a/ Pharm Origins (Pharm Origins), did introduce and cause to be introduced, and did deliver for introduction and cause to be delivered for introduction into interstate commerce, a misbranded drug, that is, "Immune Shot," by selling and distributing this misbranded drug to consumers in the Southern District of Georgia and outside the state of Georgia.

## BACKGROUND

## THE FEDERAL FOOD, DRUG, AND COSMETIC ACT

2. The United States Food and Drug Administration (FDA) was the federal agency responsible for protecting the health and safety of the American public by ensuring, among other things, that drugs are safe and effective for their intended uses and bore labeling that contained true and accurate information. The FDA's responsibilities included regulating the manufacture and distribution of drugs shipped or received in interstate commerce, as well as the labeling of such drugs. The FDA carried out its responsibilities by enforcing the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301, *et seq.*, and other pertinent laws and regulations.

3. Under the FDCA, a "drug" was defined as, among other things, an article "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man." 21 U.S.C. § 321(g)(1).

4. The "intended use" of an article meant the objective intent of the persons legally responsible for the labeling of that article. The intent was determined by such persons' expressions or could be shown by the circumstances surrounding the distribution of the article. This objective intent might, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives. It also might be shown by the circumstances that the article is, with the knowledge of such persons or their representatives, offered and used for a purpose for which it was neither labeled nor advertised. 21 C.F.R § 201.128.

2

5.  "Labeling" included the label (the written display on the immediate container of the drug), and also any other written, printed, or graphic matter upon the drug or any of its containers or wrappers, or accompanying such drug as part of an integrated distribution scheme. 21 U.S.C. §§ 321(k), 321(m). Labeling can include written statements on a website through which a drug can be ordered by a consumer.

6.  Under the FDCA, a drug was misbranded if its labeling was false or misleading in any particular. 21 U.S.C. § 352(a)(1).

## COUNT ONE
*Misbranded Drugs*
21 U.S.C. §§ 331(a) and 333(a)(1)

7.  The allegations of paragraph 1 of this Information are hereby realleged and incorporated as if fully set forth herein.

8.  From around March 2020, and continuing until on or about April 8, 2020, the exact dates being unknown, the Defendants, Matthew Ryncarz and Fusion Health and Vitality, LLC, d/b/a/ Pharm Origins (Pharm Origins), did introduce and deliver for introduction, and did cause to be introduced and delivered for introduction into interstate commerce, a drug, that is, "Immune Shot," that was misbranded, within the meaning of 21 U.S.C. § 352(a)(1), in that it bore false and misleading labeling, by selling and distributing this misbranded drug to consumers in the Southern District of Georgia and outside the state of Georgia.

9.  In order to sell Immune Shot, Defendants created the website domain http://www.immune-shot.com/boost-your-immunity (the "Website") to sell Immune Shot for $19. Defendants claimed that Immune Shot was a Vitamin D product that

included a dose of "highly concentrated cholecalciferol." Among other false and misleading statements, the Website labeling:

   a. Included a "DISCLAIMER" that stated: "What You Are About to Read is the DIRECT Opinion of One Our Top Medical Minds. He Believes He Can Beat Coronavirus, Read to See if You Agree[.]"

   b. Claimed Immune Shot would lower its consumer's risks from COVID-19 by nearly 50%. Specifically, the Website represented that "YOU will learn in JUST MINUTES . . . how to LOWER your risk of COVID 19 by nearly 50%."

   c. Targeted individuals, ages 50 and older, with heavy-handed sales pitches, including statements such as "The NEXT FIVE MINUTES could save your life," "We are offering you the exclusive price of only $19 per bottle because we know that Immune Shot could be the most important formula in the WORLD right now due to the new pandemic," "THIS could be a way to survive," "Immune Shot is Not a Luxury, It is a Necessity Right Now," "Point Blank, If YOU Leave, YOU are at Risk," and "Is Your Life Worth $19? Seriously, Is It?"

10.   Defendants also sent, and caused to be sent, an email to individuals titled "Urgent Notice," in which Defendants claimed that Pharm Origins' product was "a powerful way for you and your family to bring the fight for COVID 19."

All in violation of Title 21, United States Code, Sections 331(a) and 333(a)(1).

_____
Bobby L. Christine
United States Attorney

_____
Patrick J. Schwedler
Assistant United States Attorney
*Lead Counsel

_____
Karl Knoche
Assistant United States Attorney
Chief, Criminal Division

_____
J. Thomas Clarkson
Assistant United States Attorney
*Co-lead Counsel

(PJS by c-prw) p[Sgn by] permission)